IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-CV-36

JOSHUA FARMER, et. al

    Appellants,

v.

THE PALMETTO BANK, et. al.

    Appellees.

## APPELLEES' JOINT RESPONSE TO APPELLANTS' MOTION FOR LEAVE TO APPEAL

Appellees[1], by and through counsel, hereby object to the Motion of Joshua Farmer, et. al ("Farmers," "Debtors" or "Appellants") for Leave to Appeal ("Motion") the Bankruptcy Court's Order Denying Approval of the Debtors' First Amended Joint Disclosure Statement (the "Disclosure Statement Order"). [Bankr. Doc. No. 322].[2] As discussed in the Appellee's Joint Response to Appellants' Motion for Stay of Proceedings Pending Appeal ("Appellee's Response to Motion for Stay") and the hearing on February 9, 2011 ("Stay Hearing"), this Motion and the appeal are nothing other than a continuation of the improper actions of the Debtors which the Bankruptcy Court found to be evidence of "bad faith" and a "corporate shell game" and which this Court described (in denying a stay pending appeal) as an "abusive filing."

---

[1] The parties who have joined in this response are: 1230 Overbrook Drive Holdings, LLC, CBA-Mezzanine Capital Finance, LLC, U.S. National Bank Association, The Palmetto Bank, First National Bank of the South U.S. Bank National Association, as Trustee for the Registered Holders of ML-CFC Commercial Mortgage Trust 2007-8, Commercial Mortgage Pass-Through Certificates Series 2007-8 ("A-Noteholder") and U.S. Bank National Association, as Trustee for the Registered Holders of Merrill Lynch Mortgage Investors, Inc. Commercial Mortgage Pass-Through Certificates Series 2007-C5 ("B-Noteholder") (collectively referred to herein as the "Appellees").

[2] References to the Bankruptcy Docket in this Motion correspond to the docket in the lead bankruptcy case of Raymond and Diane Farmer, Case No. 10-40269.

The Motion should be denied because, as this Court found in the February 9, 2011 hearing, the Appellants cannot appeal the Bankruptcy Court's Order dated May 28, 2010 ("SARE Order"), or any of its rulings, as the SARE Order is a final order and the appeal period has run.  Moreover, the Appellants cannot appeal the Disclosure Statement Order because it is not a final order; the Disclosure Statement Order is consistent with controlling law such that there is no ground for granting discretionary review; and the "collateral order" doctrine is inapplicable to the Disclosure Statement Order.

**FACTS**

The facts pertinent to this response are generally set forth in the Appellees' Response to Appellant's Motion for Stay Pending Appeal and those facts are incorporated herein by reference.  However, Appellants assert in their brief in support of the Motion that Joshua Farmer informed The Palmetto Bank in February 2010 that he "was planning to restructure his affairs by collapsing the former entities, transferring the assets to himself and his father, and filing for relief under chapter 11 of the Bankruptcy Code."  Motion at 3.  Regardless of what Joshua Farmer (a licensed bankruptcy attorney) may have told Palmetto in February 2010 that he "planned" to do, the fact is that on March 31, 2010 (one day after having executed all the documents to effectuate the Pre-Petition Transfers[3] and dissolve the Entities), Joshua Farmer (acting on behalf of the various corporate entities) executed Change in Terms Agreements with Palmetto Bank on each of the loans.  A representative copy of one of those Change in Terms Agreements is attached hereto as <u>Exhibit 1</u>.

In each of those agreements, the corporate entity reaffirmed the debt, agreed that the "terms of the original obligation . . . remain unchanged and in full force and effect" and stated

---

[3] As defined in Appellees' Response to Appellant's Motion for Stay Pending Appeal, the term "Pre-Petition Transfers" refers the March 30, 2010 transactions in which Appellants' eight limited liability companies (each an "Entity" and collectively, the "Entities"), executed meeting minutes, a consent resolution, a bill of sale, and a quit claim deed whereby each Entity transferred all of its assets to Joshua Farmer and Raymond Farmer individually.

that all other terms and agreements between the parties remained in effect. These representations were false at the time they were made because of the Pre-Petition Transfers. Joshua Farmer did not inform Palmetto regarding the Pre-Petition Transfers at the time he executed the Change in Terms Agreements.

**STANDARD FOR REVIEW**

1. Under 28 U.S.C. § 158(a) the District Court has jurisdiction to hear appeals of (a) final orders, (b) interlocutory orders under § 1121(d) of title 11 "increasing or reducing the time periods referred to in section 1121 of such title," and (c) with leave of court for interlocutory orders under 28 U.S.C. § 157.

2. In the Fourth Circuit, bankruptcy court orders are final for purposes of appeal "if they finally dispose of discrete disputes within the larger case." *In re Computer Learning Center, Inc.*, 407 F.3d 656, 660 (4th Cir. 2005). Under Bankruptcy Rule 8002(a), a party has fourteen days after a final order has been entered to file a notice of appeal. Unless an appeal is timely filed, the ability to appeal is lost. *See Ballard v. Tamojira, Inc.*, 1997 WL 33062 at *1 (4th Cir. Jan. 29, 1997). Indeed, the timely filing of the notice of appeal is a jurisdictional matter, and an "untimely filing would deprive the district court of appellate jurisdiction to review the bankruptcy court's order . . ." *In re Martin*, 92 B.R. 364, 365 (Bankr. N.D. Ind. 1988). *See also Ballard* at *1 (finding that Rule 8002 is jurisdictional).

**ARGUMENT**

**I. Any Appeal from the SARE Order's Rulings is untimely.**

3. The Appellants cannot appeal from the SARE Order, or its various rulings, which became final some nine (9) months ago and conclusively resolved the issue of what law would be applied to the administration of the Debtors' assets. As this Court ruled orally at the February 9, 2011 hearing on Appellants' Motion for Stay of Proceedings Pending Appeal, the SARE

Order is a final order. Had the Debtors wanted to challenge the SARE Order, they would have had to file an appeal back in June 2010. *See* Rule 8002(a) (providing fourteen days to file a notice of appeal). Having failed to do so, Debtors cannot now belatedly appeal the SARE Order or its ruling that the Debtors' cases would proceed as if the Pre-Petition Transfers had not occurred.

4. The SARE Order unambiguously established that the Pre-Petition Transfers would be functionally ignored in applying the provisions of the Bankruptcy Code: "[t]o prevent a perceived abuse or avoidance of the bankruptcy system, the Court finds that the provisions of the Bankruptcy Code should apply to the assets owned by the Entities prior to March 30, 2010, as if the subsequent transfers did not occur." *See* SARE Order ¶ 13 [Dist. Ct. Dkt. 5-1].[4]

5. Appellants attempt to discuss the SARE Order and the Disclosure Statement Order collectively, claiming that, together, they "stand for the proposition that the bankruptcy court unraveled the pre-petition substantive consolidation," and that the Disclosure Statement Order "clarified" the SARE Order. *See* Appellants' Brief p. 12 [Dist. Ct. Dkt. 2]. However, such language does not affect the simple fact that the SARE Order itself conclusively unraveled the Pre-Petition Transfers. This ruling in the SARE Order was not timely appealed, and cannot now be challenged by appealing subsequent Bankruptcy Court orders that merely reference the earlier ruling.

---

[4] Appellants argue that this Court should exercise its discretion to hear an interlocutory appeal to address a split of authority on whether the absolute priority rule applies in individual Chapter 11 cases. This issue, however, was never even decided by the Bankruptcy Court, and is not subject to appeal. The application of the absolute priority rule here did not result from a determination by the Bankruptcy Court that the absolute priority rule generally applies in individual Chapter 11 cases. Rather, it flowed necessarily from the SARE Order's ruling that the Pre-Petition Transfers would be functionally ignored. *See* SARE Order ¶ 13 ("The alternative would be to require each of the Entities to file a separate bankruptcy petition and the Court does not believe that this is warranted or necessary in the present situation."). Because the Entities are corporations and their cases are being treated as separate and distinct from the Appellants' individual bankruptcy cases—by virtue of the un-appealed SARE Order—the absolute priority rule apply to the Entities' bankruptcy cases without regard to whether the rule should (or would) otherwise apply in individual Chapter 11 cases.

**II.     The Disclosure Statement Order is not a final order and cannot be appealed.**

6.    The Fourth Circuit has found that a court's order denying approval of a disclosure statement is an interlocutory order. *In re Wallace & Gale Co.*, 72 F.3d 21, 25 (4th Cir. 1995) *citing In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1156 (5th Cir. 1988) (seminal case which states that disclosure statement is not a final, appealable order because it is "only one step in the process of the approval and confirmation of a plan of reorganization under Chapter 11 of the Bankruptcy Code").

7.    The Appellants cannot appeal the Disclosure Statement Order because it is not a final order. The Fourth Circuit and other circuit courts that have ruled on the matter have held that a ruling on a disclosure statement is an interlocutory order which cannot be appealed as of right. *See In re Wallace,* 72 F.3d at 25; *see also* 7 Collier on Bankruptcy ¶ 1125.03 (15th ed. 2002) (collecting circuit court opinions holding that ruling on disclosure statement is interlocutory and cannot be appealed).

8.    Moreover, at the hearing on the Disclosure Statement, counsel for the Debtors informed the Bankruptcy Court that they would be filing an amended plan and disclosure statement to address creditor concerns over the amount of information contained in the disclosure statement and to make other substantive revisions to the plan. *Disclosure Statement Hearing Transcript* at 17-23 [Bankr. Doc. 300]. For instance, the Debtors said that they were going to add "a class of claims" to provide for certain rights of Palmetto with regard to tax claims (*id*. at 17:16-23); add provisions granting relief from stay to any purchaser of the Palmetto debt (*id*. at 20:2-10); and multiple other changes. In fact, counsel for the Debtors suggested to the Bankruptcy Court that we "take, probably, a couple of weeks to make this determination and reconvene . . . sometime in early January where we make these changes and at that point the

Court should approve the disclosure statement and the disclosure statement should go out for a vote." *Id*. at 22:20-23:2. Thus, the version of the disclosure statement which the Bankruptcy Court denied approval of was not even the final one which the Debtors intended to submit. As the Bankruptcy Court noted, at the hearing the Appellants discussed the amended Disclosure Statement they planned to file and suggested a period of thirty days to file the same. [Bankr. Doc. No. 335]. This led to entry of the Bankruptcy Court's order requiring a new plan and disclosure statement on or before January 26, 2011.

9. Appellants' only argument that the Disclosure Statement Order is a final order rests on the claim that the Disclosure Statement Order, rather than the SARE Order, established that the Pre-Petition Transfers should be functionally ignored. As explained above, however, this issue was conclusively resolved by the SARE Order and cannot now be relitigated.

### III. This Court should not grant Leave to Appeal under Rule 8003.

10. As the Motion states, this Court may exercise discretion to hear the appeal even though the Disclosure Statement Order was interlocutory. *See* Motion at 19. However, this Court should not grant the leave to appeal under Rule 8003 because the Debtors treated the Disclosure Statement Ruling as interlocutory and the Disclosure Statement Order does not present a controlling question of law.

11. The Appellants argue that the Disclosure Statement Order raises controlling questions of law regarding whether absolute priority rules apply in individual Chapter 11 cases. However, the Appellants misstate the Bankruptcy Court's ruling as to the absolute priority rule in an attempt to create a question of law for this appeal. The Bankruptcy Judge held that the absolute priority rule "shall apply to each of the Entities in the same manner as if none of the Pre-Petition Transfers has occurred." [Doc. No. 322, ¶ 4]. This ruling is squarely consistent with

Section 1129(b)(2) (as this Court recognized in denying the Debtors' request for a stay pending appeal).

12. The Appellants also argue in the Motion that the Bankruptcy Court exceeded its authority under section 105(a) by requiring the Debtors to file multiple plans. Motion, pg. 18. However, this is also a mischaracterization of the Disclosure Statement Order which clearly allows the Debtors to file either a single plan or multiple plans. Accordingly, there is no controlling question of law which should lead this Court to review the interlocutory Disclosure Statement Order.

## IV.  The Application of the Absolute Priority Rule is Not Appealable Under the "Collateral Order" Doctrine.

13. Appellants take issue with only one aspect of the Disclosure Statement Order that was not definitively resolved by the SARE Order, and that is the Bankruptcy Court's decision to require the Appellants to comply with the absolute priority rule contained in section 1129(b) of the Bankruptcy Code.[5]

14. As an initial matter, this result flows directly from the SARE Order's ruling that the Pre-Petition Transfers would be functionally ignored. In its later Disclosure Statement Order, the Bankruptcy Court merely reached the obviously correct conclusion that, since the eight limited liability companies were being treated as if they had filed separate Chapter 11 petitions, the absolute priority rule applied with respect to their assets and liabilities.

15. This unremarkable holding is not subject to interlocutory appeal. Appellants argue that, even if the Disclosure Statement Order is not a final order, the "collateral order" doctrine would allow appellate review of the Bankruptcy Court's application of the absolute

---

[5] Absolute priority stands for the proposition that each senior security holder in the order of its priority is entitled to satisfaction of its claim before those with junior rights may receive value from the estate. *See Group of Institutional Investors v. Chicago, M., St. P. & Pac. R.R.,* 318 U.S. 565, 63 S. Ct. 727, 749, 87 L. Ed. 959, 1007 (1943).

priority rule. This argument reflects a fundamental misunderstanding of the collateral order doctrine.

16. The collateral order doctrine "treats certain interlocutory orders as final for purposes of appeal, on the grounds that such 'collateral orders' present self-contained issues that are independently ripe for immediate appellate review, despite the pendency of further proceedings in the district court." *Jones v. Braxton*, 392 F.3d 683, 686 (4th Cir. 2004). As Appellants recognize, a collateral order resolves issues completely separate from the merits of the action that would be unreviewable on appeal from a final judgment. *See* Appellants' Brief p. 16. "In other words, 'collateral orders' *are* final orders" resolving collateral issues. *Jones*, 392 F.3d at 686. As the Seventh Circuit has recognized, "collateral orders" resolve issues so divorced from the merits that an appeal could be heard without disrupting the lower court proceedings. *See Palmer v. Chicago*, 806 F.2d 1316, 1320 (7th Cir. 1986) (identifying as "genuinely collateral" orders that "can be appealed (provided the requirement of irreparable harm is satisfied) without any disruption of the proceedings on the merits"), *cert. denied*, 481 U.S. 1049.

17. The application of the absolute priority rule here is not collateral, but central to the merits of the reorganization proceedings. As the absolute priority rule provides a foundational requirement for reorganization plans, reorganization proceedings could not continue during the pendency of an appeal on this central issue. Accordingly, the Bankruptcy Court's application of the absolute priority rule is not a collateral issue, and Appellants have no right to an interlocutory appeal.

WHEREFORE, for the foregoing reasons, the Appellees respectfully request that the Court enter an order: (1) denying the Motion; and (2) granting such other and further relief as the Court may deem just and proper.

PPAB 1778018v3

8

Case 3:11-cv-00036-GCM   Document 10   Filed 02/10/11   Page 8 of 10

This, the 10th day of February, 2011.

/s/ Ashley A. Edwards
William L. Esser IV, Esq. (NC Bar no. 29201)
Ashley A. Edwards, Esq. (NC Bar no. 40695)
Parker Poe Adams & Bernstein LLP
401 South Tryon Street, Suite 300
Charlotte, NC 28202
(704) 372-9000
*Counsel for Palmetto Bank*

/s/ Alan McInnes
James Heath Pulliam, Esq.
Alan McInnes
Kilpatrick Stockton, LLP
214 North Tryon Street, Suite 2500
Charlotte, North Carolina 28202
*Counsel for CBA-Mezzanine Capital Finance, LLC and 1230 Overbrook Drive Holdings, LLC*

/s/ Louis G. Spencer
Louis G. Spencer, Esq.
McNair Law Firm, P.A.
301 South Tryon Street, Suite 1615
Charlotte, North Carolina 28202
*Counsel for First National Bank of the South*

## CERTIFICATE OF SERVICE

This is to certify that the undersigned counsel has served the Appellees' Joint Response to Appellants' Motion for Leave to Appeal on all of the parties to this cause.

The following parties were served via U.S. mail:

Bradley E. Pearce, Esq.
Katten Muchin Rosenman LLP
550 South Tryon Street, Suite 2900
Charlotte, North Carolina 28202

The following were served through the Court's CM/ECF system:

| | |
|---|---|
| Andrew T. Houston, Esq. | U.S. Bankruptcy Administrator |
| Hamilton Moon Stephens Steele & Martin | 402 West Trade Street, Suite 200 |
| 201 South College Street, Suite 2020 | Charlotte, North Carolina 28202 |
| Charlotte, North Carolina 28244 | |

This, the 10th day of February, 2011.

/s/ Ashley A. Edwards
William L. Esser IV, Esq. (NC Bar no. 29201)
Ashley A. Edwards, Esq. (NC Bar no. 40695)
Parker Poe Adams & Bernstein LLP
401 South Tryon Street, Suite 300
Charlotte, NC 28202
(704) 372-9000
*Counsel for Palmetto Bank*