*0960*



# The Palmetto Bank
## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $6,242,488.75 | 09-29-2006 | 10-05-2011 | 6103778 | 140 / 43 | | 185 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** East Ridge Apartments, LLC ;
305 Honeysuckle Drive
Rutherfordton, NC 28139

**Lender:** The Palmetto Bank
Spartan Centre
101 W St John St
Spartanburg, SC 29306

---

**Principal Amount: $6,242,488.75**                     Date of Agreement: 3/31/10

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Original Note dated September 29, 2006 in the Original Amount of $6,048,750.00. This Note was modified on August 18, 2009 with an interest rate 5.0%. Loan payable in Four (4) payments of interest only beginning September 5, 2009 and followed by Twenty-One (21) equal monthly installments in the amount of $40,842.00 beginning January 5, 2010 and continuing monthly with all unpaid remaining principal and accrued interest due on the scheduled Maturity Date of October 5, 2011.

**DESCRIPTION OF COLLATERAL.** A Real Estate First Mortgage on property located at 300 Regency Road, Spartanburg, SC 29307; dated September 29, 2006, executed by East Ridge Apartment, LLC to The Palmetto Bank, which said Mortgage is recorded in the Office of the Register of Deeds for Spartanburg County, State of South Carolina in Mortgage Book 3758 at Page 591 and an Assignment of Rents dated September 29, 2006 recorded in Deed Book 85 at page 804. All Inventory, Equipment and Fixtures owned by East Ridge Apartments, LLC per UCC #061002-0910487, also UCC filed in Spartanburg County UCC #2006-53581.

**DESCRIPTION OF CHANGE IN TERMS.** Payment is modified from Four (4) payments of interest only beginning September 5, 2009 and followed by Twenty-One (21) equal monthly installments in the amount of $40,842.00 beginning January 5, 2010 to Four (4) payments of interest only beginning with the February 5, 2010 payment and continuing monthly. Sixteen (16) Equal monthly installments in the amount of $40,842.00 will resume beginning June 5, 2010 and will continue monthly with one final payment of any unpaid remaining principal and all accrued interest to be due and payable on the Maturity Date of October 5, 2011. All other terms and agreements to remain.

**PROMISE TO PAY.** East Ridge Apartments, LLC ("Borrower") promises to pay to The Palmetto Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Six Million Two Hundred Forty-two Thousand Four Hundred Eighty-eight & 75/100 Dollars ($6,242,488.75), together with interest on the unpaid principal balance from February 4, 2010, until paid in full.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule: 4 monthly consecutive interest payments, beginning February 5, 2010, with interest calculated on the unpaid principal balances at an interest rate of 5.000% per annum based on a year of 360 days; 16 monthly consecutive principal and interest payments of $40,842.00 each, beginning June 5, 2010, with interest calculated on the unpaid principal balances at an interest rate of 5.000% per annum based on a year of 360 days; and one principal and interest payment of $6,029,684.33 on October 5, 2011, with interest calculated on the unpaid principal balances at an interest rate of 5.000% per annum based on a year of 360 days. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts on this loan. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a minimum interest charge of $15.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: The Palmetto Bank, Spartan Centre, 101 W St John St, Spartanburg, SC 29306.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the total sum due under this Agreement will continue to accrue interest at the interest rate under this Agreement, with the final interest rate described in this Agreement applying after maturity, or after maturity would have occurred had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest

# CHANGE IN TERMS AGREEMENT
## (Continued)

immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes Lender's reasonable attorneys' fees in an amount not less than fifteen percent (15%) of the amount owing on this Agreement and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of South Carolina without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of South Carolina.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by the following collateral described in the security instruments listed herein:

(A) a Mortgage dated September 29, 2006, to Lender on real property located in Spartanburg County, State of South Carolina.

(B) an Assignment of All Rents to Lender on real property located in Spartanburg County, State of South Carolina.

(C) Inventory, equipment and fixtures described in a Commercial Security Agreement dated _____.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

**NOTICE CONCERNING APPRAISAL WAIVER.** The laws of South Carolina provide that in any real estate foreclosure proceeding a defendant against whom a personal judgment is taken or asked may within thirty days after the sale of the mortgaged property apply to the court for an order of appraisal. The statutory appraisal value as approved by the court would be substituted for the high bid and may decrease the amount of any deficiency owing in connection with the transaction. THE UNDERSIGNED HEREBY WAIVE(S) AND RELINQUISH(ES) THE STATUTORY APPRAISAL RIGHTS WHICH MEANS THE HIGH BID AT THE JUDICIAL FORECLOSURE SALE WILL BE APPLIED TO THE DEBT.

CHANGE IN TERMS SIGNERS:

EAST RIDGE APARTMENTS, LLC

By: _____
Joshua B. Farmer, Member of East Ridge
Apartments, LLC

LASER PRO Lending, Ver. 5.46.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2010 All Rights Reserved. SC L-639.FL45002.FC TR-41123 PR-13