IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-CV-36

| | |
|---|---|
| IN RE: | ) |
| | ) |
| JOSHUA FARMER, et. al | ) |
|    Appellants, | ) |
| v. | ) |
| THE PALMETTO BANK, et. al | ) |
|    Appellees. | ) |
| | ) |

**BANKRUPTCY ADMINISTRATOR'S RESPONSE TO
MOTION FOR LEAVE TO APPEAL**

The undersigned, United States Bankruptcy Administrator for the Western District of North Carolina, responds to the *Brief of the Debtors in Support of Appellate Jurisdiction under 28 U.S.C. § 158(a)(1) or, in the Alternative, Motion for Leave to Appeal Pursuant to Federal Rule of Bankruptcy Procedure 2003* (the "Motion"). The undersigned suggests that at the crux of the matters before this Court are two issues. First, when faced with bad faith bankruptcy filings due to eve of bankruptcy transfers, should the Bankruptcy Court dismiss the Debtors' cases or does the Bankruptcy Court have the power under 11 U.S.C. § 105(a) to fashion an alternative, equitable remedy which affords the Debtors the relief requested while balancing and protecting the interests of creditors? Second, should this Court entertain and rule on premature and speculative confirmation issues absent a confirmation order? The undersigned asserts that a ruling by this Court of these questions will resolve most, if not all, matters before this Court.

# FACTS

The parties to this appeal have provided the Court with a full statement of the facts in various pleadings filed with the Court. The facts are largely uncontroverted and will not be restated here.

# ARGUMENT

I. **The Bankruptcy Court Exceeded Its Authority Pursuant to 11 U.S.C. § 105(a) in the SARE Order and Subsequent Rulings Related to the SARE Order.**

   a. **The Bankruptcy Court's Authority Pursuant to 11 U.S.C. § 105(a).**

Limitations on the Bankruptcy Court's powers under 11 U.S.C. § 105(a) are discussed by the Fourth Circuit Court of Appeals in <u>Official Committee of Equity Security Holders v. Mabey (In re A.H. Robins Company, Inc.)</u>, 832 F.2d 299 (4th Cir. 1987). In <u>Mabey</u>, the court did not allow the establishment of an emergency treatment fund as it conflicted with the Bankruptcy Code's priority distribution scheme.

> *The creation of the Emergency Treatment Program has no authority to support it in the Bankruptcy Code and violates the clear policy of Chapter 11 reorganizations by allowing piecemeal, pre-confirmation payments to certain unsecured creditors.* <u>Id.</u> at 302.

The <u>Mabey</u> court stated:

> *While the equitable powers emanating from § 105(a) . . . may encourage courts to be innovative, and even original, these equitable powers are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules.* <u>Id.</u>

In addition, the Mabey court cited the Seventh Circuit which stated:

> *[T]he fact that a proceeding is equitable does not give the judge a free-floating discretion to redistribute rights in accordance with his personal views of justice and fairness, however enlightened those views may be.* Id., *citing*, In the Matter of Chicago, Milwaukee, St. Paul and Pacific Railroad Company, Debtor, 791 F.2d 524 (7th Cir. 1986).

The Fourth Circuit has made it clear that a bankruptcy court's equitable use of 11 U.S.C. § 105 does not give a bankruptcy court unlimited discretion.

### b. The Bankruptcy Court Exceeded Its Authority.

In fashioning an equitable remedy to allow the Debtors to remain in bankruptcy, the Bankruptcy Court exceeded its authority under 11 U.S.C. § 105(a). The SARE Order[1] was an attempt by the Bankruptcy Court to treat the Pre-Petition Transfers[2] and the dissolution of the Single Asset Entities as a fiction—as if they had not occurred—in an effort to provide the Debtors with bankruptcy relief and, at the same time, resurrect creditor protections. The Debtors complain that the Bankruptcy Court should have accomplished this through an adversary proceeding. Due to the Pre-Petition Transfers, this is an impossibility.[3] On the eve of bankruptcy, the Debtors dissolved or terminated

---

[1] "SARE Order" referred to herein is the *Order Resolving Motion of Palmetto Bank for a Determination that the Debtors are Subject to Various Provisions of the Bankruptcy Code Relating to Single Asset Real Estate and Those Applicable to Corporate Entities*, entered May 28, 2010, Docket #104.

[2] The capitalized terms "Pre-Petition Transfers" and "Single Asset Entities" shall have the same meaning here as in the SARE Order.

[3] Federal Rules of Bankruptcy Procedure 7001(1) and (2) require adversary proceedings "to recover money or property" and "to determine the validity, priority, or extent of a lien or other interest in property." Section 548 of Title 11 allows a trustee (and debtor-in-possession) to "avoid any transfer . . . of an interest of the debtor in property" where certain criteria are met. Because the Pre-Petition Transfers were transfers **to the Debtors** and not pre-petition transfers from the Debtors, §548 is inapplicable to unwind the Pre-Petition Transfers. There does not

3

Case 3:11-cv-00036-GCM   Document 13   Filed 02/23/11   Page 3 of 8

the Single Asset Entities.  As such, the Single Asset Entities no longer exist and have no ability to act to file bankruptcy or bring a fraudulent transfer action pursuant to 11 U.S.C. § 548.

The Bankruptcy Court's SARE Order is an effort to fictionally resurrect or reincorporate the Single Asset Entities such that the creditors of the Single Asset Entities could have the protections that would have existed had the corporate identity remained and had separate bankruptcy cases been filed.  While this is an "inventive" and "original" solution addressing the Debtors' bad faith, the Bankruptcy Code and Federal Rules of Bankruptcy Procedure apply to entities actually before the bankruptcy court—entities that exist and for which the bankruptcy court can legitimately exercise jurisdiction.  The use of § 105 to accomplish the equitable relief in the SARE Order is a result that the Bankruptcy Code does not contemplate.

### c. This Court Should Remand these Cases to the Bankruptcy Court for Entry of Orders Dismissing These Cases.

The Bankruptcy Court entered the SARE Order "[t]o prevent a perceived abuse or avoidance of the bankruptcy system."  <u>SARE Order</u>, page 5, ¶ 13 (5/28/2010).  In the Disclosure Statement Order[4], the Bankruptcy Court incorporated the SARE Order by reference and stated its opinion that the Debtors' cases were bad faith filings:

> *The Court Recognizes that it probably should have dismissed the Debtors' bankruptcy cases at the beginning as bad faith filings, as evidenced by the Pre-Petition Transfers and the corporate shell game which resulted in the*

---

appear to be a Bankruptcy Code remedy to accomplish the unwinding of the Pre-Petition Transfers.

[4] "Disclosure Statement Order" referred to herein is the *Order Denying Approval of the Debtors' First Amended Joint Disclosure Statement,* entered on January 6, 2011, Docket # 322.

> *present structure. . . . Allowing debtors to change the substantive and procedural rights of their creditors through transfers of assets on the eve of a bankruptcy filing would be an abuse of the bankruptcy system and would violate the intent of Congress as set forth in the Bankruptcy Code.*
> Disclosure Statement Order, page 2, ¶ 2, (1/6/2011).

The Bankruptcy Court has already found that the Debtors' cases constitute bad faith filings. The SARE Order attempts to grant the Debtors bankruptcy relief by placing certain requirements on the Debtors. The Debtors' rejection of the Bankruptcy Court's "administrative accommodation" is evidenced by the filing of a disclosure statement and plan which did not comply with the SARE Order and by the filing of the instant appeals. In a classic case of "be careful what you ask for," the Debtors' rejection of the equitable relief offered by the Bankruptcy Court leaves no option but dismissal.

## II. This Court Should Not Grant Leave to Appeal Confirmation Issues Brought Before Confirmation Is Considered by the Bankruptcy Court.

The Debtors do not have an appeal of right of the SARE Order and the Disclosure Statement Order and this Court should not grant the Debtors leave to appeal. At the February 9, 2011 hearing, this Court ruled that the SARE Order was a final order which was not timely appealed. The Disclosure Statement Order is not a final order.[5]

Section 158(a)(3) of Title 28 grants jurisdiction to the district courts to hear bankruptcy appeals "with leave of court, from other interlocutory orders and decrees." While Section 158 does not set forth criteria to be used by the district courts to determine

---

[5] The undersigned agrees with the analysis of the issue of the interlocutory nature of the Disclosure Statement Order and of the application of the collateral order doctrine as provided by the Appellees in *Appellees' Joint Response to Appellants' Motion for Leave to Appeal*, filed on February 10, 2011, Docket #10.

a motion for leave to appeal, Section 158(c) provides that "an appeal . . . shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts . . . ." In Robinson v. Roberts & Stevens, P.A., 1:09cv453 (W.D.N.C. 9/9/2010), this Court looked to 28 U.S.C. § 1292(b) for guidance.

> *Section 1292(b) of Title 28 provides that leave to appeal an interlocutory order may be granted when it involves (1) a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation.* Id., at page 12.

The "controlling issue of law" proposed by the Debtors is the application of the absolute priority rule to the individual Debtors. While the application of the absolute priority rule to individual debtors is an issue where there is a difference of opinion, it is not an issue that "the reversal of the bankruptcy court's order would be dispositive of the case as either a legal or practical matter and determination of the issue on appeal will materially affect the outcome." Id., *citing*, In re Rood, 426 B.R. 538, 548 (D.Md. 2010). The application of the absolute priority rule is a confirmation issue, not a disclosure statement issue and is premature to determine on appeal outside of a confirmation order. The absolute priority rule of 11 U.S.C. § 1129(b) inserts itself into the confirmation process **if and only if** a debtor cannot obtain confirmation pursuant to 11 U.S.C. § 1129(a). The disclosure statement approval process is not determinative of whether the absolute priority rule will apply to the confirmation proceeding. The absolute priority rule issue, as well as other issues raised by the Debtors (multiple accepting impaired classes, multiple plans), are **confirmation issues** which have been prematurely appealed and

6

should not be determined by this Court prior to the completion of the confirmation process by the Bankruptcy Court.

## CONCLUSION

Wherefore, for the reasons stated herein, the undersigned respectfully requests that the Court deny the Debtors' Motion for Leave to Appeal, remand this case to the Bankruptcy Court for further proceedings including dismissal of the Debtors' cases and for such other and further relief as the Court deems just and proper.

Dated: February 23, 2011.

/s/ Linda W. Simpson
Linda W. Simpson
United States Bankruptcy Administrator
402 W. Trade Street, Suite 200
Charlotte, NC 28202-1669
N.C. Bar #12596
Tel: 704-350-7590   Fax: 704-344-6666
Linda_Simpson@ncwba.uscourts.gov

7
Case 3:11-cv-00036-GCM   Document 13   Filed 02/23/11   Page 7 of 8

# CERTIFICATE OF SERVICE

This is to certify that the undersigned counsel has served the *Bankruptcy Administrator's Response to Motion for Leave to Appeal* on the parties to this cause through the Court's CM/ECF system in accordance with Local Rule 5005-1 as follows:

Andrew T. Houston, Esq.
Hamilton Moon Stephens Steele & Martin
201 South College Street, Suite 2020
Charlotte, North Carolina 28244

Travis W. Moon, Esq.
Hamilton Moon Stephens Steele & Martin
201 South College Street, Suite 2020
Charlotte, North Carolina 28244

James Heath Pulliam, Esq.
Kilpatrick Stockton, LLP
214 North Tryon Street, Suite 2500
Charlotte, North Carolina 28202

Bradley E. Pearce, Esq.
Katten Muchin Rosenman LLP
550 South Tryon Street, Suite 2900
Charlotte, North Carolina 28202

This, the 23rd day of February, 2011.

Louis G. Spencer, Esq.
McNair Law Firm, P.A.
301 South Tryon Street, Suite 1615
Charlotte, North Carolina 28202

Joe M. Lozano Jr., Esq.
Brice, Vander Linden & Wernick, P.C.
9441 LBJ Freeway, Suite 350
Dallas, Texas 75243

Hillary Brodgers Crabtree, Esq.
Moore & Van Allen, PLLC
100 North Tryon Street, Floor 47
Charlotte, North Carolina 28502-4003

William L. Esser IV, Esq.
Ashley A. Edwards, Esq.
Parker Poe Adams & Bernstein LLP
401 South Tryon Street, Suite 300
Charlotte, NC 28202

     /s/ Linda W. Simpson
Linda W. Simpson
United States Bankruptcy Administrator
402 W. Trade Street, Suite 200
Charlotte, NC 28202-1669
N.C. Bar #12596
Tel: 704-350-7590   Fax: 704-344-6666
Linda_Simpson@ncwba.uscourts.gov